Shane M. Popp, Esq. (BN 219668)
spopp@losmp.com
LOSMP
1801 Century Park East
16th Floor
Los Angeles, CA 90067
(p) 310-930-6051
(f) 310-861-1780

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT FOR
# THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Royalty Family, Inc.,<br>　　　　Plaintiff,<br>　vs.<br><br>Pierre Carlos Lepine Garcia, an individual,<br>　　　　Defendant(s) | Case No.:<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DILUTION (INJUNCTIVE RELIEF SOUGHT)** |

## COMPLAINT FOR TRADEMARK INFRINGEMENT

Plaintiff Royalty Family, Inc. ("Royalty") complains of defendant Pierre Carlos Lepine Garcia ("Garcia") as follows:

## JURISDICTION AND VENUE

1.　Jurisdiction exists under 28 U.S.C. § 1338(b) because defendant has infringed plaintiff's trademarks(s). Jurisdiction further exists pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act). This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367. Federal law, namely the Trademark Act (Lanham Act) of 1946, *as amended*, by the Trademark Dilution Revision Act of 2006 (15

1

U.S.C. §1051, *et. seq.*), makes trademark infringement illegal and actionable through a private cause of action.

2.     Plaintiff is informed and believes that venue is proper under the general federal venue statute, 28 U.S.C. § 1391, because the Defendant transacts business affairs in this district and sells or otherwise distributes their infringing content, products, or services in this district, and because a substantial part of the events giving rise to the claims asserted arose in this district.

## PARTIES

3.     Royalty Family, Inc. ("Royalty") is a California corporation with offices at 16130 Ventura Blvd., Suite 540, Encino, California 91436.

4.     Pierre Carlos Lepine Garcia ("Garcia") is an individual, residing in the city of Pacoima, California (Defendant's full address is being withheld in compliance with L.R. 5.2-1).

## BACKGROUND

5.     Plaintiff is a media company and content creator operating, *inter alia*, a YouTube® channel, entitled THE ROYALTY FAMILY, which is located on the world wide web at www.youtube.com/royaltyfamily, as well as multiple social media channels such as TikTok® and Instagram®. THE ROYALTY FAMILY has operated at least as early as 2017 and has over 28.4 million subscribers.

6.     Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 6,882,424, Registered on October 25, 2022, for **THE ROYALTY FAMILY**.

7.  Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 6,903,855, Registered on November 22, 2022, for **ROYALTY GAMING**.

8.  Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 6,882,427, Registered on October 25, 2022, for:



9.  Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 7,302,051, Registered on February 13, 2024, for **THE ROYALTY FAMILY**.

10. Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 7,169,553, Registered on September 19, 2023, for:



11. Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 7,169,554, Registered on September 19, 2023, for **STAY ROYALTY**.

12. Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 7,313,562, Registered on February 27, 2024, for **KING FERRAN**.

13. Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 7,335,157, Registered on March 26, 2024, for **ANDREA ESPADA TV**.

14. Royalty owns and controls, the following United States Trademark: U.S. Registration No.: 7,526,104, Registered on October 8, 2024, for **KING ALI**.

15. Royalty is the owner / assignee and owns all right, title and interest in and has standing to sue for infringement on the registered Trademarks set forth in paragraph(s) 6 thru 14 (each a "Royalty Mark" and collectively, the "Royalty Marks").

16. Royalty has expended substantial time, money, and resources marketing, advertising, and promoting its digital content and on-line advertising and marketing services sold under the Royalty Mark(s) including, but not limited to, Plaintiff's YouTube® channel(s), Instagram®, and TikTok®.

17. For example, upon information and belief, each individual episode / video or "short" of Plaintiff's digital content takes approximately one (1) to two (2) days to produce.

18. Upon information and belief, each individual episode / video or "short" of Plaintiff's digital content costs approximately $1,200.00 USD to produce and edit. Upon information and belief, Plaintiff has approximately 804 videos on THE ROYALTY FAMILY channel alone totaling approximately $964,800.000 USD.

19. The digital content and on-line advertising and marketing services Plaintiff offers under the Royalty Mark(s) are of high quality and commercial value and have been viewed over 9.5 billion times.

20. Upon information and belief and in view of the Plaintiff's subscribers and views, the Royalty Marks are distinctive to both the consuming public and Petitioner's trade and have developed substantial goodwill associated with the Royalty Marks.

21. As a result of the distinctiveness and widespread use and promotion throughout the United States (and abroad), the Royalty Marks are famous marks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

22. Garcia is an individual who operates a YouTube® channel as well as other social media sites, such as TikTok® and Instagram® under the name(s) Pierre Lepine, a.k.a. Pierre Carlos Lepine Garcia, a.k.a. Lepine Garcia, etc. On or around October 2022 thru January 2023, Garcia operated under the name /piernitaslepine/.

23. Garcia began posting content that was defamatory, harassing, cyberbullying, and caused personal and commercial damage ("Unlawful Posts") to Royalty and its principals.

24. On several occasions, Royalty notified YouTube® of violations of YouTube's Harassment and Cyberbullying Policies, YouTube's Legal Policies, and YouTube's Community Guidelines. Additionally, on several occasions, Royalty notified TikTok® of violations of TikTok's Terms of Service, TikTok's Intellectual Property Policy, and TikTok's Community Guidelines.

25. At the Time, substantially all of the Royalty Marks were pending before the USPTO and had not proceeded to formal registration on the principal register. Upon information and belief, Royalty ensured proper notice and reserved all rights therein.

26. Notably, YouTube's Intellectual Property Policy states, "*<u>Trademark infringement is improper or unauthorized use of a trademark in a way that is likely to cause confusion as to the source of that product</u>*. YouTube policies *<u>prohibit videos and channels that infringe trademarks</u>*. *<u>If your content uses someone else's trademarks in a way that might cause confusion, your videos can be blocked. Your channel may also be suspended.</u>*" (*Emphasis added*).

27. Non-limiting, exemplary Unlawful Posts are shown below:



28. 

29. Additionally,







30.

31. Additionally,

32. 

33. YouTube took no meaningful action regarding the Unlawful Posts. Upon information and belief, YouTube® was in violation of its own policies relating to Harassment and Cyberbullying, which states, "__Content that features prolonged name calling or malicious insults__ (such as racial slurs) based on someone's intrinsic attributes. __These attributes include__ their protected group status, physical attributes, or their status as a survivor of sexual assault, __non-consensual intimate imagery distribution__, __domestic abuse, child abuse and more__ as well as content uploaded with the __intent to shame__, deceive or insult a __minor__." (__Emphasis added__).

34. Notably, ¶30, whereby a video states, "My Mom Hits Me" was posted and viewed approximately 598K times. In another video, the title states, "King Ferran Needs Your Help". The video was viewed approximately 35K times.

35. In another video, (see ¶28) it shows "non-consensual intimate imagery" of Andrea Espada (a Royalty principal). This video was viewed approximately 76K times.

36. Upon information and belief, in addition to the multiple violations of YouTube's Harassment and Cyberbullying Policies, Garcia also linked the video to Royalty's subscription base using the hashtag (#), *inter alia*, @royaltyfam, and #royaltyfamily.

37. In another example, (see ¶32), Garcia also linked these videos to Royalty's subscription base using the hashtag(#), *inter alia*, #theroyaltyfamily and #royaltyfamily.

38. Upon information and belief Garcia derives revenue from the Unlawful Posts. Based on current values, it is believed that Garcia has derived approximately $175,000.00 USD.

39. Recently, Garcia has added several YouTube® channels in an effort to garner more attention to himself (and derive more revenue) while using the Royalty Marks.

40. For example, the YouTube® channel entitled @ferransdad uses #royaltyfamily and #kingferran as a "linking" portal to Garcia's videos. A cursory review of the "About" section shows that @ferransdad is attempting to show a false affiliation with Royalty (See, ¶41).

41. 

42. Upon information and belief, Garcia's YouTube® channel @ferransdad has approximately 80.7K subscribers, with 257 videos posted, and over 8 million views.

43. Upon information and belief, of the approximately 257 videos posted, approximately 200 videos unlawfully "link" using a Royalty Mark to Royalty's subscription base. Upon information and belief, the "link" has occurred without Royalty's consent.

44. Upon information and belief Garcia derives revenue and continues to derive revenue from the Unlawful Posts. Based on current values, it is believed that Garcia has derived approximately $175,000.00 USD.

45. Royalty again notified YouTube® of the Royalty Marks as well as the violation of YouTube's policies relating to the posting of content. Specifically, <u>YouTube's Intellectual Property Policy</u> as it relates to violations of registered Trademarks.

## THE INFRINGING CONDUCT

### *Garcia's Direct Infringing Use of the Royalty Marks*

46. As an initial matter, under current law, Garcia's "linking" to the Royalty Marks does not constitute fair use, since Garcia is gaining commercial advantage by leveraging the goodwill and reputation of the Royalty Marks.

47. Royalty complains and alleges that Garcia is "linking" via a hyperlink to the <u>Royalty subscription base</u> and posting content which violates social media policies (i.e., YouTube's Intellectual Property Policy) in an effort to blur, dilute and diminish the goodwill of the Royalty Marks.

48. Furthermore, in doing so, Garcia is deriving revenue from his postings that are using the Royalty Marks. Essentially, by using the Royalty Marks, Garcia is able to reach approximately 28.4 Million subscribers every time he makes an Unlawful Post.

49. Upon information and belief, both Garcia and YouTube have been notified and are aware (either actually or constructively) of the Royalty Marks.

50. Despite numerous requests from Royalty to Garcia and YouTube® and TikTok®, Garcia refuses to cease using the Royalty Marks.

### *Likelihood of Confusion as to the Source*

51. Upon information and belief, Garcia uses the Royalty Marks (specifically *royaltyfamily* and *kingferran*) on his "About" description of his YouTube® channel (See, ¶41). Notably, the "About" description of the YouTube® is the public information page about a specific channel. At a minimum, a reasonable consumer would believe that @ferransdad is affiliated with Royalty.

52. Additionally, Garcia has set up a gofundme account on his "About" description (gofund.me/a33da996) with a link entitled HELPKINGFERRAN gofundme please.

53. Upon information and belief, a reasonable consumer would likely be confused as to the source of this gofundme page and the purpose of the funds. Additionally, Garcia is blurring and tarnishing Plaintiff's Royalty Marks and the threat of dilution is highly perceived and potential because the famous Royalty Marks are affixed to less famous content and/or services.

### *Harm to Plaintiff(s) and the General Public*

54. Garcia's unauthorized use of the Royalty Marks, or any similar designation thereto, creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Plaintiff's goods and services, and is likely to falsely suggest a sponsorship, connection, license, or association of Garcia with Royalty.

55. Garcia's activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff(s) and the Royalty Marks.

56. Garcia's activities have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free form confusion, mistake, and deception.

57. Upon information and belief, actual confusion has already occurred.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114-1117; Lanham Act §32)

58. Royalty realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 57 of this Complaint.

59. Without Royalty's consent, Defendant has used – in connection with the sale, offering for sale, distribution, dissemination, or advertising of its content, products and services – trademarks and designs, including the Unlawful Posts (non-limiting examples of which are shown in this Complaint) that infringe upon Royalty's registered Trademark(s).

60. Defendant's acts of willful trademark infringement have been committed with the intent to cause confusion, mistake, or deception, cause harm to Royalty and consumers, and are in violation of 15 U.S.C. § 1114.

61. As a direct and proximate result of Defendant's infringing activities, Royalty is entitled to recover all of Defendant's unlawful profits and Royalty's substantial damages under 15 U.S.C. 1117(a).

62. Defendant's infringement of Royalty's Trademark's is an exceptional case and was intentional, entitling Royalty to treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a).

63. Royalty is entitled to injunctive relief pursuant to 15 U.S.C. 1116(a).

## COUNT II
## FEDERAL UNFAIR COMPETITION
*(False Designation of Origin and False Description)*
*(15 U.S.C. § 1125(a); Lanham Act §43(a))*

64. Royalty realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 63 of this Complaint.

65. Defendant's use of the infringing Royalty Marks, including the "linking" by hyperlink of Garcia's content as shown by example in this Complaint – tends falsely to describe its origin within the meaning of 15 U.S.C. § 1125(a)(1). Defendant's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant and Defendant's content and services, to the detriment of Plaintiff and consumers in violation of 15 U.S.C. § 1125(a)(1).

66. As a direct and proximate result of Defendant's willful infringing activities, Plaintiff is entitled to recover all of Defendant's unlawful profits and Royalty's substantial damages under 15 U.S.C. § 1117(a).

67. Defendant's infringement of the Royalty Marks represents an exceptional case and was intentional, entitling Royalty to treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

68. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## COUNT III
## FEDERAL DILUTION OF FAMOUS MARKS (BLURRING AND TARNISHMENT)
*(Trademark Dilution Revision Act of 2006)*
*(15 U.S.C. § 1125(c); Lanham Act §43(c))*

69. Royalty realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 68 of this Complaint.

70. Plaintiff's Royalty Marks are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and were distinctive and famous prior to Defendant's conduct as alleged in this Complaint.

71. Defendant's conduct is likely to cause dilution of the Royalty Marks by diminishing each of their distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

72. Royalty is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

## COUNT IV

## CALIFORNIA TRADEMARK INFRINGEMENT AND DILUTION UNDER CALIFORNIA AND COMMON LAW
### (Cal. Bus. & Prof. Code § 14200, et. seq.; Cal. Bus. & Prof. Code §14247)

73. Plaintiff realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 72 of this Complaint.

74. Plaintiff owns registered and common law rights in its Royalty Marks.

75. Defendant's use of the Royalty Marks is identical or nearly identical to the Royalty Marks and occurred without Royalty's consent.

76. Plaintiff's Royalty Marks became famous in California long before Defendant began using its infringing trademarks.

77. Defendant's use of the Royalty Marks is likely to cause consumer confusion about the source of Defendant's content and services or about a relationship between Royalty and Defendant and is likely to dilute Plaintiff's Royalty Marks, in violation of California Business & Professions Code §§ 14200 et seq., California Business & Professions Code § 14247, and California common law.

78. Defendant infringed and diluted Plaintiff's Royalty Marks with knowledge and intent to cause confusion, mistake, or deception.

79. Defendant's conduct is aggravated by that kind of willfulness, wantonness, malice, and conscious indifference to the rights and welfare of Plaintiff for which California law allows the imposition of exemplary damages.

80. Pursuant to California Business & Professions Code §§ 14247 and 14250, Plaintiff is entitled to injunctive relief and damages in the amount of three times Defendant's

profits and three times all damages suffered by Royalty by reason of Defendant's dissemination, use, display, and sale of infringing content and services.

# COUNT V
# CALIFORNIA UNFAIR COMPETITION
*(Cal. Bus. & Prof. Code § 17200)*

81. Plaintiff realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 80 of this Complaint.

82. Defendant's conduct constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code section § 17200.

83. Plaintiff is entitled to injunctive relief preventing the conduct alleged in this Complaint.

# PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff prays that this Court grants it the following relief:

1. Adjudge that Defendant infringed the Royalty Marks in violation of Royalty's rights under common law, 15 U.S.C. § 1114, and/or California law;

2. Adjudge that Defendant has competed unfairly with Royalty in violation of Plaintiff's rights under common law, 15 U.S.C. § 1125(a), and/or California law;

3. Adjudge that Defendant's activities are likely to dilute Royalty's famous Marks, in violation of Plaintiff's rights under common law, 15 U.S.C. § 1125(c), and/or California law;

4. Adjudge that Defendant and its agents, employees, attorneys, successors, assigns, affiliates, third-party social media platform, and joint venturers and any person, person(s), or

entities in active concert or participation with it, and/or any person(s) acting for, with, by, through or under it, including but not limited to, third-party social media platforms (YouTube®, TikTok®, Instagram®, Facebook®, etc.) be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

    a. Manufacturing, producing, sourcing, importing, exporting, selling, buying, disseminating, offering for sale, distributing, posting, licensing, advertising, or promoting any content or goods or services, using any words, symbols or designs that so resemble the Royalty Marks as to be likely to cause confusion, mistake or deception, on or in connection with any content, product or service that is not authorized by or for Royalty, including without limitation, the infringing trademarks and designs that are the subject of this Complaint and for which Defendant is responsible, or any other approximation of Plaintiff's rights and trademarks;

    b. Using any word, term, name, symbol, device, or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendant' content or products and services with Royalty or as to the origin of Defendant' content or goods and services, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

    c. Claiming trademark rights in Plaintiff's Royalty Marks, or any other word, symbol, or design that is confusingly similar to the Royalty Marks, including by applying now or in the future for federal registration of

16

trademarks comprising the Royalty Marks or any other word, symbol, or design that is similar to the Royalty Marks;

d. Infringing Plaintiff's rights in and to any of its trademarks in its Royalty Marks brand products or otherwise damaging Plaintiff's goodwill or business reputation;

e. Further diluting the Royalty Marks;

f. Otherwise competing unfairly with Plaintiff in any manner; and

g. Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

5. Adjudge that Defendant be required immediately to deliver to Plaintiff's counsel its entire inventory of infringing content, products and services, including without limitation all videos, social media posts, and channels, labeling, photographs, advertising and promotional material, and other material for producing or disseminating such items, domain names, or social media handles that are in its possession or subject to its control and that infringe or facilitate infringement of Plaintiff's trademarks as alleged in this Complaint.

6. Adjudge that Defendant, within thirty (30) days after service of the judgment demanded herein, be required to file with this Court and serve upon Plaintiff's counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

7. Adjudge that Royalty recover from Defendant its damages and lost profits, and Defendant's profits, in an amount to be proven at trial, as well as punitive damages under California law;

8. Adjudge that Defendant be required to account for any profits that are attributable to its illegal acts, and that Plaintiff be awarded (1) Defendant' profits and (2) all damages sustained by Plaintiff, under 15 U.S.C. § 1117, plus prejudgment interest;

9. Adjudge that the amounts awarded to Plaintiff pursuant to 15 U.S.C. § 1117 shall be trebled;

10. Order an accounting of and impose a constructive trust on all of Defendant's funds and assets that arise out of its infringing and dilutive activities;

11. Adjudge that Plaintiff be awarded its costs and disbursements incurred in connection with this action, including Plaintiff's reasonable attorneys' fees and investigative expenses; and

12. Adjudge that all such other relief be awarded to Plaintiff as this Court deems just and proper.

//

Dated:   03-February-2025

By: *Shane Popp*
Shane M. Popp, Esq.
LOSMP
1801 Century Park E.
16th Floor
Los Angeles, CA 90067
(o)  424-240-9870
(c)  310-930-6051
(f)  310-861-1780
spopp@losmp.com

*Counsel for Plaintiff Royalty Family, Inc.*